UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE ANN HORNE,

                           Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

<u>DECISION & ORDER</u>

19-CV-0225MWP


## <u>PRELIMINARY STATEMENT</u>

Plaintiff Michelle Ann Horne ("Horne") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 9, 11).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Horne's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise."  *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

    (1)    whether the claimant is currently engaged in substantial
           gainful activity;

    (2)    if not, whether the claimant has any "severe impairment"
           that "significantly limits [the claimant's] physical or mental
           ability to do basic work activities";

    (3)    if so, whether any of the claimant's severe impairments
           meets or equals one of the impairments listed in Appendix
           1 of Subpart P of Part 404 of the relevant regulations (the
           "Listings");

    (4)    if not, whether despite the claimant's severe impairments,
           the claimant retains the residual functional capacity
           [("RFC")] to perform [her] past work; and

    (5)    if not, whether the claimant retains the [RFC] to perform
           any other work that exists in significant numbers in the
           national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.      The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  Under step one of the process, the ALJ found that Horne had not engaged in

substantial gainful activity between February 7, 2014, the alleged onset date, and December 31,

2017, her date last insured.  (Tr. 15-31).[1]  At step two, the ALJ concluded that Horne had the

severe impairments of obesity, lumbar degenerative disc disease, cervical degenerative disc

disease, status-post excision of vocal cord lesions and history of thyroid cancer, status-post

thyroidectomy.  (*Id.*).  The ALJ also found that Horne suffered from osteoporosis, right eye

vision problems, bilateral carpal tunnel syndrome, bilateral hearing loss, asthma, and tobacco

abuse, but that those impairments were nonsevere.  (*Id.*).  At step three, the ALJ determined that

Horne did not have an impairment (or combination of impairments) that met or medically

equaled one of the listed impairments in the Listings.  (*Id.*).

The ALJ concluded that through her date last insured Horne retained the RFC to

perform medium work with certain limitations.  (*Id.*).  Specifically, the ALJ found that Horne

could lift and carry up to fifty pounds occasionally and twenty pounds frequently and could sit,

stand, and walk for up to six hours per day, but could only sit for up to one-and-a-half hours at a

---

[1] The administrative transcript (Docket # 5) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

time and stand or walk for up to one hour at a time. (*Id.*). She further concluded that Horne could tolerate loud noise, was able to frequently reach in all directions, push, pull, balance, stoop, crawl, and climb ramps and stairs, could occasionally kneel and crouch, but must avoid ladders, scaffolds, and unprotected heights. (*Id.*). At steps four and five, the ALJ found that Horne was capable of performing her past relevant work as a certified nurse assistant and that other jobs existed in significant numbers in the national economy that Horne could perform, including the positions of linen room attendant, day worker, laundry worker, cashier II, office helper, marker, storage facility clerk, and ticket taker. (*Id.*). Accordingly, the ALJ found that Horne was not disabled through her date last insured. (*Id.*).

III.   **Horne's Contentions**

Horne contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 9-1). First, Horne argues that the ALJ failed to evaluate properly her subjective complaints. (*Id.* at 13-16). Second, Horne maintains that the ALJ improperly evaluated the opinion evidence of record, resulting in an RFC determination not supported by substantial evidence. (*Id.* at 16-21).

IV.   **Analysis**

A.   **The ALJ's Assessment of Horne's Subjective Complaints**

I turn first to Horne's contention that the ALJ failed to explain adequately her determination that Horne's subjective complaints were inconsistent with the record as a whole. (*Id.* at 13-16). For the reasons explained below, Horne's challenge is without merit.

5

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929.[2] First, the ALJ must determine whether the evidence shows that the claimant has a medically determinable impairment or impairments that could produce the relevant symptoms. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

Here, the ALJ concluded that Horne's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 24). In doing so, the ALJ assessed Horne's subjective complaints in the context of the entire record. I disagree with Horne's contention that the ALJ failed to explain her determination or that she minimized or overlooked evidence in reaching her determination.

---

[2] The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment. Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

Horne's challenge appears to center on her contention that the ALJ failed to explain sufficiently how Horne's subjective complaints were inconsistent with the record. (Docket # 9-1 at 15-16).  To the contrary, the ALJ explained at length her determination that Horne's complaints of disabling symptoms were not consistent with the objective findings, Horne's determination not to pursue the more aggressive treatment options that she was offered, and her inconsistent compliance with her pain management providers' recommended courses of treatment.  (Tr. 24, 28).  She also noted that, despite complaints of debilitating pain, Horne participated in significant physical activities, including riding a bicycle, caring for her seventeen-year-old son suffering from cerebral palsy, and completing household chores. (Tr. 24-25, 28).  This record reveals that the ALJ applied the proper legal standards in analyzing Horne's subjective complaints and that substantial evidence supports her determination that Horne's complaints were inconsistent with the record for the reasons she stated.  *See Luther v. Colvin*, 2013 WL 3816540, *7 (W.D.N.Y. 2013) (ALJ properly assessed subjective complaints where she "reviewed all of [p]laintiff's subjective complaints . . . [and] properly considered [p]laintiff's activities of daily living, inconsistent testimony and how her symptoms affected her attempts at maintaining a job").

In sum, Horne's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence.  "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position."  *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016).  Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record."  *Id.*; *see also Avant v.*

*Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)).  The ALJ's decision in this case demonstrates that she weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or her resolution of the conflicts in it.  *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

**B.     The ALJ's Consideration of Opinion Evidence**

I turn next to Horne's contention that the ALJ erred in her consideration of the opinion evidence.  (Docket # 9-1 at 16-21).  Specifically, she maintains that the ALJ improperly gave more weight to the opinions offered by Edwin Cruz ("Cruz"), MD, MBA, than to the opinions of Horne's treating physicians Michael K. Landi ("Landi"), MD, and Romanth Waghmarae ("Waghmarae"), MD.  (*Id.*).  The Commissioner disagrees, maintaining that none of Horne's treating physicians issued a medical opinion as that term is defined in the relevant regulations.  (Docket # 11-1 at 9-11).

According to the regulations, an ALJ "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence" in determining

8

whether a claimant is disabled, and "will evaluate every medical opinion" received.  20 C.F.R.

§§ 404.1527(b), (c), 416.927(b), (c).[3]  In evaluating medical opinions, regardless of their source,

the ALJ should consider the following factors:

> (1)    the frequency of examination and length, nature, and extent
> of the treatment relationship,
>
> (2)    the evidence in support of the physician's opinion,
>
> (3)    the consistency of the opinion with the record as a whole,
>
> (4)    whether the opinion is from a specialist, and
>
> (5)    whatever other factors tend to support or contradict the
> opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see* 20 C.F.R.

§§ 404.1527(c), 416.927(c); *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)

("[t]hese factors are also to be considered with regard to non-treating sources, state agency

consultants, and medical experts"); *House v. Astrue*, 2013 WL 422058, *2 (N.D.N.Y. 2013)

("[m]edical opinions, regardless of the source, are evaluated considering several factors outlined

in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

The regulations define "medical opinions" as "statements from acceptable

medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant]

can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R.

§§ 404.1527(a)(2), 416.927(a)(2).  "Medical opinions do not include the results of objective

tests, such as any clinical or diagnostic techniques," and they "differ from mere treatment notes,

which merely list the symptoms detailed by the [p]laintiff and/or tests performed by the doctor."

---

[3]  These regulations apply to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §§ 404.1520c and 416.920c apply.

*Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 766 (S.D.N.Y. 2018) (citations and quotations omitted).  "They instead must reflect a judgment with regard to the nature and severity of plaintiff's limitations beyond a mere diagnosis and description of the symptoms."  *Id.* (quotations omitted); *see*, *e.g.*, *Mushtare v. Colvin*, 2015 WL 3901981, *5 (N.D.N.Y. 2015) ("the treatment notes of [plaintiff's doctors] contain records of symptoms and diagnoses but are devoid of judgments regarding what [p]laintiff can or cannot do relative to his diagnoses and symptoms[;] [a]ccordingly, these treatment notes do not constitute medical opinions warranting the ALJ's consideration in support of her disability determination").

Here, Horne claims that the ALJ erred by not analyzing several treatment records from Landi and Waghmarae as medical opinion evidence.  (Docket # 9-1 at 18-20 (citing Tr. 351-52, 441, 450-55, 497)).  The first is contained in an August 1, 2014 letter authored by Landi summarizing a treatment visit.[4]  (*Id.* at 19 (citing Tr. 351-52)).  The letter indicated that Horne's chief complaint was ongoing chronic back pain, which was exacerbated by her ongoing care of her son, which demanded "heavy physical work."  (Tr. 351).  According to Landi, Horne's involvement in her son's care limited her ability to attend to her own rehabilitative needs, including attending appointments for physical therapy or chiropractic treatment.  (*Id.*).  This, in Landi's view, limited her treatment options.  (*Id.*).  According to Landi, Horne's treatment options included "physical therapy, chiropractic treatment, repeat injections or surgery."  (Tr. 352).  Horne declined these treatment recommendations, indicating that she was unable to attend physical therapy or chiropractic treatment for "logistical[]" reasons and that her recovery from surgery would require her son to have another caregiver – an option she was not

---

[4]  All of the records reflecting treatment provided by Landi are in the form of letters authored by Landi summarizing treatment visits.  (*See* Tr. 344-45, 348-52).

sure she was "willing to pursue." (*Id.*). Horne indicated that she felt that her symptoms were "overall tolerable" with medication management. (*Id.*).

Second, Horne cites two records regarding pain management treatment with Sara Brandel ("Brandel"), PA-C, who was under the supervision of Waghmarae. (Docket # 9-1 at 20 (citing Tr. 441, 450-55)).[5] On April 18, 2017, Horne presented for a pain management appointment. (Tr. 450-55). The note detailed Horne's medical history, her subjective complaints, objective physical examination findings, an assessment, and recommended treatment. (*Id.*). Specifically, the treatment note stated, among other things, that Horne had an abnormal gait, limited range of motion in her cervical and lumbar spines, full orientation and sensation, limited strength in her shoulders, hips, knees, and ankles, positive straight leg raise and slump test, and that Horne was grimacing due to pain. (*Id.*). Horne's treatment options included injections and lumbar spine surgery. (*Id.*). Horne indicated that her lower back pain was largely controlled by injections, but that she was postponing further injections until surgery on her neck could be completed. (*Id.*). Horne continued to manage her pain with medication. (*Id.*).

The second note summarized a meeting between Horne and Brandel on July 14, 2017. (Tr. 439-43). Again, objective examination findings were reported, including limited range of motion in the lumbar spine, positive straight leg raise and slump test, full orientation and sensation, and bilateral finger weakness, and grimacing due to pain. (*Id.*). Brandel observed that several treatment options remained available to Horne, but that Horne's "health remains on hold because of her son." (*Id.*). According to Brandel, Horne remained a candidate for injections, surgery, and imaging of her left shoulder and hip, but she continued to postpone these

---

[5] Horne cites an additional page of the administrative transcript, but that page does not contain any medical records. (*Id.* (citing Tr. 97)).

treatments.  (*Id.*).  She also noted that Horne was "applying for SSD for financial help" and that she would support Horne's request.  (*Id.*).

As an initial matter, the records described above do not detail Horne's functional limitations based on her diagnoses and symptoms and, in the Court's view, appear to constitute treatment notes.  As explained above, these notes list Horne's symptoms and diagnoses or diagnostic impressions, detail certain tests administered and explain results, and describe various treatment plans, which, without more, are generally not considered medical opinions.  *See*, *e.g.*, *Bailey v. Berryhill*, 2017 WL 1102671, *2-3 (S.D.N.Y. 2017) (medical reports documenting plaintiff's medical history, the results of physical and neurological examinations, treatment and treatment plans, diagnoses, without assessing the functional limitations associated with plaintiff's impairments, do not constitute medical opinions within the meaning of 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)).  Significantly, the reports cited by Horne do not contain "judgments regarding what [Horne] can or cannot do relative to [her] diagnoses and symptoms." *See Mushtare v. Colvin*, 2015 WL 3901981 at *5.

In any event, the ALJ summarized the medical evidence of record extensively, specifically citing these treatment notes authored by Landi and Brandel (under the supervision of Waghmarae).  (Tr. 21 (citing Tr. 351), 23 (citing Tr. 443, 455), 24 (citing Tr. 351)).  In doing so, the ALJ recognized the objective physical findings assessed by those providers, which specifically included limited range of motion (*See* Tr. 23 ("[r]ange of motion was restricted in her back and straight leg raise testing was positive")), but nevertheless concluded that those findings did not render Horne disabled.  Contrary to Horne's contention, the ALJ did not give "limited weight" to the treatment providers in favor of the opinion authored by Cruz; instead, she identified the objective findings contained in the treatment notes, including those authored by

Landi and Waghmarae, and considered those findings in conjunction with the record as a whole, which included Cruz's opinion of Horne's functional limitations, Horne's determination to postpone more aggressive treatment options in favor of medication management, and Horne's activities of daily living.  (*See generally* Tr. 19-29).

More importantly, none of the information contained in those treatment records was inconsistent with the ALJ's conclusions.  Rather, the information contained in the records supports the ALJ's conclusions that although Horne suffered from severe medical impairments with documented objective findings, she retained the ability to perform work activities with certain limitations and that her own description of her symptoms and their limiting effects was not fully consistent with the record.  For these reasons, I find that remand is not warranted based on the ALJ's consideration and weighing of the medical opinions in the record.  *Grega v. Saul*, 2020 WL 3042132, *1 (2d Cir. 2020) (summary order) (remand not warranted where "none of the evidence that [plaintiff] argues was improperly excluded was significantly more favorable to [plaintiff] than the evidence that the ALJ considered").

Horne seemingly faults the ALJ for placing too much emphasis on Horne's determination to postpone or to not pursue recommended treatment (physical therapy, chiropractic treatment, injections, and surgery) without considering the explanation for those decisions – particularly Horne's ongoing responsibility to provide daily care for her son. (Docket # 9-1 at 20 ("[t]he ALJ erroneously limited the weight of . . . Landi . . . by stressing the lack of urgency for surgery despite her own recognition of the [p]laintiff's responsibility to care for her disabled son")).  In her decision, however, the ALJ specifically recognized that Horne declined various treatment due to her ongoing care obligations.  (Tr. 24 ("[s]he declined physical therapy, chiropractic treatment, and surgery, citing logistics of caring for her son who has special

needs")).  In view of the ALJ's explicit consideration of this explanation, I find no grounds for remand.  *See Cook v. Comm'r of Soc. Sec.*, 2020 WL 1139909, at *6 (W.D.N.Y. 2020) ("[c]ontrary to [plaintiff's] contentions, the ALJ specifically acknowledged that some of [plaintiff's] difficulty with compliance stemmed from his homelessness and lack of insurance").


## CONCLUSION

This Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**.  Horne's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and Horne's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


                                                    *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                              United States Magistrate Judge

Dated:  Rochester, New York
        August 26, 2020